UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

LOUISA RESENDES and :
CHARLES SMITH, :
Plaintiffs, :
:
v. : CA 06-286 ML
:
NICOLE BROWN, et al., :
Defendants. :

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

Before the Court is the motion of Plaintiffs Louisa Resendes and Charles Smith ("Plaintiffs") to remand this matter to the Providence County Family Court. See Notice and Order (Document ("Doc.") #9) (stating that the Court will treat Plaintiffs' letter of 12/7/06 as a motion to remand). The motion has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). The Court has concluded that no hearing is necessary. For the reasons stated herein, I recommend that the motion be granted and that this matter be remanded to the Providence County Family Court.

**I. Background**[1]

Plaintiffs originally filed this action against a single defendant, Nicole Brown ("Defendant Brown"), in the Rhode Island Family Court on September 8, 2004. See State Court Record (Doc. #2), Family Court Domestic Civil Docket Sheet in P20042260M ("State Court Docket") at 1-2. On November 18, 2004, they filed an Amended Complaint, seeking guardianship and temporary custody

[1] This section is taken in large measure from the Court's Report and Recommendation of November 2, 2006 (Doc. #5).

of a minor child, the son of Defendant Brown. See State Court Record, Amended Complaint filed in P2004-2260M ("Amended Complaint") at 1, 3-4; State Court Docket at 2. According to Plaintiffs, they had raised the child since September of 2000, four months after his birth. See Amended Complaint at 1-2. A Family Court Stipulation dated January 18, 2005, adjudged Plaintiffs the de facto parents of the minor child and granted them rights including, but not limited to, visitation and communication with him. See Notice of Removal (Doc. #1), Attachment ("Att.") 1 (Petition and Complaint filed in P2004-2260M) ("Petition") ¶ 8; State Court Record, Stipulation filed in P2004-2260M ("Stipulation"). It appears that the child resided with Plaintiffs until approximately July 6, 2005, when Defendant Brown "abducted the Minor Child from the Plaintiff's [sic] home abruptly terminating visitation of Minor Child with the Plaintiffs." Petition ¶ 10. Sometime thereafter, Defendant Brown was placed in the Witness Protection and Relocation Program and was relocated, along with the minor child, out of the State of Rhode Island by the Rhode Island State Attorney General's Office. See generally Petition; see also Notice of Removal, Att. 2 (Motion to Hold in Contempt filed contemporaneously with Petition) at 2; Plaintiffs' Memorandum in Support of Objection to Federal Defendants' Motion to Dismiss at 3.

On June 14, 2006, Plaintiffs filed a Petition in the pending Rhode Island Family Court case naming as defendants: Defendant Brown, Denise Aiken,[2] the United States of America Department of Justice, the United States Attorney General District of Rhode Island (the latter two defendants are collectively identified hereafter as the "Federal Defendants"), the Attorney General of the State of Rhode Island, two Assistant Attorneys General, an

---

[2] Denise Aiken appears to be Defendant Brown's attorney. See Petition at 1.

unidentified state prosecutor, the witness protection coordinator, unidentified members of the Rhode Island State Police, unidentified members of the witness protection review board, and a guardian ad litem. See Petition; State Court Docket at 6. The United States Attorney for the District of Rhode Island filed a Notice of Removal in this Court on June 16, 2006, see Doc. #1, and notified the Rhode Island Family Court of the removal pursuant to 28 U.S.C. § 1446(2)(e), see State Court Docket at 6.

After removing the action to this Court, the Federal Defendants filed a motion to dismiss on July 19, 2006. See Federal Defendants' Motion to Dismiss (Doc. #3). This Magistrate Judge issued a Report and Recommendation (Doc. #5) on November 2, 2006, recommending that the motion of the Federal Defendants be granted because of insufficient process and insufficient service of process, failure to exhaust administrative remedies, failure to state a claim upon which relief can be granted, and failure to name the proper party. See Report and Recommendation at 4-5, 23. On November 30, 2006, the Report and Recommendation was accepted by District (now Chief) Judge Mary M. Lisi, see Order (Doc. #6), and the Federal Defendants' Motion to Dismiss was granted, see id. (granting the motion of the "United States of America").

**II. The Petition**[3]

According to the Petition, Plaintiffs "bring this action to obtain Declaratory Injunctive Relief and Damages and to Permanently Restrain Defendants individually and in their official capacity from [i]nterfering with Plaintiff's [sic] and Minor Child's Civil and De Facto parent rights as set forth in Stipulation of the Court ...." Petition ¶ 1; see also id. (prayer for relief). They further seek to "recover their costs,

---

[3] See n.1.

expenses, losses and other damages incurred or to be incurred as a result of Defendants['] interference with Plaintiff's [sic] and Minor Child's Civil and De facto parent rights as set forth in Stipulation of the Court." Petition ¶ 1; see also id. (prayer for relief).

The Petition contains headings which denominate four causes of action: interference, negligence, defamation, and conduct.[4] See id. ¶¶ 22-29. However, these claims appear to overlap as each count refers to interference with Plaintiffs' "De facto parent rights," id. ¶¶ 23, 25, 27, 29,[5] and also to intentional or willful infliction of mental or emotional distress, see id. ¶¶ 22-29. In a section entitled "Application for Petition and Complaint," Plaintiffs refer to "[c]ivil [r]ights and interests protected by and under the Constitution of the United States; Rhode Island Constitution; Rhode Island General Laws pertaining to Domestic Relations; Uniform Paternity Act; [and] federal and state Tort Claims Act." Id. ¶ 30. Plaintiffs seek declaratory/ injunctive relief, damages, and civil penalties. See id. (prayer for relief).

**III. Discussion**

Although the Petition contains a claim for monetary damages, it is clear that Plaintiff's primary complaint is that Defendants allegedly have interfered with and are continuing to interfere with Plaintiffs' "De facto parent rights" of the minor child of Defendant Brown as those rights were established by the

---

[4] The Court uses Plaintiffs' description of the causes of action. In doing so, the Court does not intend to imply that four separate causes of action exist or have been adequately pled.

[5] The fourth cause of action does not explicitly refer to Plaintiffs' de facto parental rights but only to "rights." Petition ¶ 29. However, the fourth cause of action incorporates the allegations of the previous causes of action which do contain such reference. Petition ¶ 28.

Stipulation. Indeed, the first request in Plaintiffs' prayer for relief is for "Declaratory Injunctive Relief ... to Permanently Restrain Defendants from interfering with Plaintiff's [sic] and Minor Child's civil and De facto parent rights as set forth in [the] Stipulation of the [Family] Court." Petition (prayer for relief). Among the rights which Plaintiffs claim are visitation and communication with the minor child. See id. ¶ 17. Moreover, in their motion to hold various Defendants in contempt, Plaintiffs explicitly state that they seek to have the minor child placed with them. See Notice of Removal, Att. 1 (Motion to Hold in Contempt filed contemporaneously with Petition) at 3.

After reviewing these claims, the Court concludes that the domestic relations exception to federal court jurisdiction applies. "The domestic relations exception 'divests the federal courts of power to issue divorce, alimony, and child custody decrees.'" Norton v. McOsker, 407 F.3d 501, 505 (1st Cir. 2005) (quoting Ankenbrandt v. Richards, 504 U.S. 689, 703, 112 S.Ct. 2206, 2215 (1992)); see also Marshall v. Marshall, ___ U.S. ___, 126 S.Ct. 1735, 1746 (2006)("[C]hild custody decrees remain outside federal jurisdictional bounds.")(internal quotation marks omitted); Ankenbrandt, 504 U.S. at 694-95, 112 S.Ct. at 2210 (explaining that "the domestic relations limitation on federal-court jurisdiction ... [is] an understood rule that has been recognized for nearly a century and a half"); id. at 703, 112 S.Ct. at 2215 (reaffirming "the validity of the exception as it pertains to divorce and alimony decrees and child custody orders"). "The aim of the exception is to keep federal courts from meddling in a realm that is peculiarly delicate, that is governed by state law and institutions (*e.g.*, family courts), and in which inter-court conflicts in policy or decrees should be kept to an absolute minimum." Dunn v. Cometa, 238 F.3d 38, 41 (1st Cir. 2001).

There are sound policy considerations which support the exception.

> As a matter of judicial economy, state courts are more eminently suited to work of this type than are federal courts, which lack the close association with state and local government organizations dedicated to handling issues that arise out of conflicts over divorce, alimony, and child custody decrees. Moreover, as a matter of judicial expertise, it makes far more sense to retain the rule that federal courts lack power to issue these types of decrees because of the special proficiency developed by state tribunals over the past century and a half in handling issues that arise in the granting of such decrees.

Ankenbrandt, 504 U.S. at 704, 112 S.Ct. at 2215; see also Fernos-Lopez v. Figarella Lopez, 929 F.2d 20, 22 (1st Cir. 1991)("Among the considerations underlying this exception are the strong state interest in domestic relations, the relative expertise of state courts, their ability to provide ongoing supervision, the availability there of professional support services, and the undesirability of potentially incompatible federal and state decrees in this area.").

While the domestic relations exception to federal jurisdiction is narrow, see Norton v. McOsker, 407 F.3d at 505, "encompass[ing] only cases involving the issuance of a divorce, alimony, or child custody decree ...," Ankenbrandt, 504 U.S. at 704, 112 S.Ct. at 2215, here Plaintiffs are seeking, among other relief, visitation and communication with the minor child, see Petition (prayer for relief), and ultimately placement of the child with them, see Notice of Removal, Att. 1 (Motion to Hold in Contempt filed contemporaneously with Petition) at 3. Such relief falls squarely within the parameters of the domestic relations exception. See Smith v. Oakland County Cir. Ct., 344 F.Supp.2d 1030, 1065 (E.D. Mich. 2004)("Plaintiffs are seeking, *inter alia*, various orders relating to child custody and

visitation. Such questions of domestic relations are outside the realm of Federal jurisdiction, pursuant to the domestic relations exception."); Nouse v. Nouse, 450 F.Supp. 97, 100 (D. Md. 1978) ("[P]laintiff's claims herein relate to child custody and visitation and communication rights in connection therewith. As such, they fall within the domestic relations exception to federal diversity jurisdiction."); see also Ex Parte Burrus, 136 U.S. 586, 594, 10 S.Ct. 850, 853 (1890)(voiding a writ of habeas corpus issued by a federal district court to restore a child to the custody of the father and stating "[a]s to the right to the control and possession of this child, as it is contested by its father and its grandfather, it is one in regard to which neither the Congress of the United States, nor any authority of the United States, has any special jurisdiction").

The fact that the Petition also contains claims for monetary damages does not bar application of the exception in this case because I find that those claims, at their core, are based on Plaintiffs' demands for custody and visitation. See Sutter v. Pitts, 639 F.2d 842, 844 (1st Cir. 1981)(finding that domestic relations exception applied because "[a]lthough [plaintiff] has clothed her complaint in the garb of a civil rights action ... her claim boils down to a demand for custody of the child"); Deuel v. Dalton, Civil No. 3:06-0234, 2006 WL 2370239, at *1, *3 (M.D. Tenn. Aug. 15, 2006)(holding that domestic relations exception applied to plaintiff's claims, including custodial interference and infliction of emotional distress, in case involving custody of child); Yelverton v. Yelverton, 614 F.Supp. 528, 530 (N.D. Ind. 1985)("[T]he fact that the petitioner has couched the complaint in terms of a tort does not alter this conclusion [that the exception applies], because the essence of the claim is a domestic relations dispute."); cf. McLaughlin v. Cotner, 193 F.3d 410, 413 (6th Cir. 1999)(finding that plaintiff

was attempting to disguise the true nature of the action by claiming she was merely making a claim for damages based on a breach of contract when the alleged "contract" was part of a separation agreement that was voluntarily entered into by the parties and was incorporated into the divorce degree). Plaintiffs are seeking, in effect, a declaration of their rights to visit and communicate with the minor child based on the Stipulation. Cf. id. at 414 ("[T]his case is not a tort or contract suit that merely has domestic relations overtones, but is one seeking a declaration of rights and obligations arising from marital status.").

Alternatively, I find that Plaintiffs' tort claims are inextricably intertwined with the issue of custody of the minor child and with the prior Family Court proceedings. See Kahn v. Kahn, 21 F.3d 859, 861 (8th Cir. 1994)(finding domestic relations exception applicable where plaintiff's claims, although drafted to sound in tort, were inextricably intertwined with the prior property settlement incident to the divorce proceeding); Congleton v. Holy Cross Child Placement Agency, 919 F.2d 1077, 1079 (5th Cir. 1990)(concluding "that the final resolution of this dispute is of necessity so intertwined with parental rights and the custodial status of the child that it cannot fairly be separated; the case thereby implicates the policies supporting the domestic relations exception"); cf. Jones v. Brennan, 465 F.3d 304, 307 (7th Cir. 2006)("[P]roceedings ... involving child custody ... are *in rem* in character-they are fights over a thing of value that is in the court's control-and another court should not try to elbow its way into the fight.").

**IV. Conclusion**

For the reasons stated above, I find that the domestic relations exception to federal court jurisdiction applies to the claims against the remaining Defendants in this action.

Accordingly, I recommend that Plaintiffs' motion be granted and that this matter be remanded to the Providence County Family Court.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

David L. Martin

DAVID L. MARTIN
United States Magistrate Judge
January 9, 2007